STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY v
ENTERPRISE LEASING COMPANY

ENTERPRISE LEASING COMPANY OF DETROIT v SAKO

AUTO CLUB INSURANCE ASSOCIATION v SNAPPY CAR RENTAL, INC

Docket Nos. 100032, 100033, 101473, 102396. Argued March 5, 1996 (Calendar Nos. 3-5). Decided June 25, 1996.

State Farm Mutual Automobile Insurance Company brought an action in the Wayne Circuit Court against Enterprise Leasing Company, seeking a determination of liability for damages suffered in an automobile accident involving an automobile rented from Enterprise by State Farm's insured while her personal car was being repaired. The rental agreement provided that the primary residual coverage would be provided by the renter's insurer. The court, Roland L. Olzark, J., granted State Farm's motion for summary disposition. The Court of Appeals, WEAVER, P.J., and JANSEN, J. (MURPHY, J., concurring), reversed in an unpublished opinion per curiam and remanded the case, finding that Administrative Order No. 1990-6 bound it to follow the holding of *State Farm Mut Automobile Ins Co v Snappy Car Rental, Inc*, 196 Mich App 143 (1992), which permitted the owner of a rented vehicle to shift the responsibility for providing insurance coverage to the driver and the driver's insurer. A special panel of the Court of Appeals, DOCTOROFF, C.J., and MURPHY, D. E. HOLBROOK, JR., MACKENZIE, HOOD, GRIBBS, SAWYER, and FITZGERALD, JJ. (WEAVER, WAHLS, GRIFFIN, NEFF, and TAYLOR, JJ., dissenting), again reversed and remanded, finding that *State Farm Mut Automobile Ins Co v Snappy Car Rental* was the appropriate resolution (Docket Nos. 168790, 150077). State Farm appeals.

Enterprise Leasing Company of Detroit and its excess insurer, Travelers Insurance Company, brought an action in the Oakland Circuit Court against Majid Sako, who rented a vehicle from Enterprise, and State Farm Mutual Automobile Insurance Company, his insurer, seeking a declaration that State Farm was obligated to indemnify Enterprise and provide primary coverage for settling three lawsuits brought against Sako arising from his involvement in an automobile accident with the rental car while his personal car was being repaired. The rental agreement required that primary residual coverage was to be provided by the renter's insurer. The

court, John N. O'Brien, J., granted summary disposition for Enterprise with regard to both Sako and State Farm. The Court of Appeals, REILLY, P.J., and CORRIGAN and R. J. JASON, JJ., affirmed with regard to State Farm, reversed with regard to Sako, and remanded the case (Docket No. 160375). State Farm appeals.

Auto Club Insurance Association brought an action in the Washtenaw Circuit Court against Snappy Car Rental, Inc., seeking a determination that Snappy, a self-insurer, was the primary insurer of its rental car driven by ACIA's insured while his personal car was being repaired. The rental agreement offered a selection of insurance coverages, and the renter chose not to be covered by Snappy. The court, Melinda Morris, J., granted Snappy's motion for summary disposition. The Court of Appeals, CORRIGAN, P.J., and CAVANAGH, and L. C. ROOT, JJ., affirmed in an unpublished memorandum opinion (Docket No. 155699). ACIA appeals.

In an opinion by Chief Justice BRICKLEY, joined by Justices LEVIN, CAVANAGH, BOYLE, RILEY, and WEAVER, the Supreme Court *held*:

In these cases, the car rental companies and, when applicable, their insurers, must provide primary residual liability coverage for damages arising from the use of their vehicles by permissive users. The drivers' insurers are required to provide excess coverage as specified in the policies, up to policy limits.

The no-fault act makes the owner or registrant of a vehicle primarily responsible for providing liability insurance coverage for the use of the vehicle by any permissive user. Permitting an owner to shift that liability to the users of the vehicle would violate the intent of the act. Even if the act permitted such shifting, a driver cannot unilaterally bind the driver's insurer to provide primary coverage. Any agreement to do so is void, which would leave the car uninsured if the car owner were not required to provide coverage.

Justice WEAVER took no part in the decision of *State Farm v Enterprise*.

*State Farm v Enterprise*, reversed.

*Enterprise v Sako*, affirmed in part and reversed in part.

*ACIA v Snappy*, reversed.

Justice MALLETT, dissenting, stated that in *Citizens Ins Co v Federated Mut Ins Co*, 448 Mich 225 (1995), the Supreme Court refused to reverse the decision of the Court of Appeals in *State Farm Mut Automobile Ins Co v Snappy Car Rental, Inc*, 196 Mich App 143 (1992). Because *Snappy Car Rental* involved the same issue presented in these cases, it is only wise and prudent to adhere to the decision in *Citizens*.

206 Mich App 7; 520 NW2d 663 (1994) reversed.

207 Mich App 422; 526 NW2d 21 (1994) affirmed in part and reversed in part.

*State Farm Mut Automobile Ins Co v Snappy Car Rental*, 196 Mich App 143; 492 NW2d 500 (1992), overruled.

*Romain, Donofrio, Kuck & Egerer, P.C.* (by *Ernst W. Kuck* and *Pat M. Donofrio*), for plaintiff-appellant State Farm Mutual Automobile Insurance Company.

*Gofrank & Kelman* (by *Thomas M. Douglas*) for plaintiffs-appellees Enterprise Leasing Company.

*Barnett & Rich, P.C.* (by *Gordon J. Barnett, Jr.*), for plaintiff-appellant Auto Club Insurance Association.

*Gofrank & Kelman* (by *Thomas M. Douglas*) for defendant-appellee Enterprise Leasing Company.

*Draugelis & Ashton* (by *John A. Ashton* and *Richard Haynes*) for defendant-appellant State Farm Mutual Automobile Insurance Company.

*Siemion, Huckabay, Bodary, Padilla, Morganti & Bowerman, P.C.* (by *Charles A. Huckabay* and *Donna M. Severyn*) for defendant-appellee Snappy Car Rental, Inc.

BRICKLEY, C.J. In these three cases, we are called upon to determine whether Michigan's no-fault insurance act is violated by a car rental agreement purporting to shift the responsibility for providing primary residual liability coverage on the vehicle from the owner to the driver and the driver's insurer. We conclude that any such shifting provision is void. Vehicle owners, including the car rental companies in these cases, are required to provide primary coverage

for their vehicles and all permissive users of their vehicles.

I

These cases involve the liability insurance coverage of rental cars. The disputes center on whether the car driver's insurer or the car owner's insurer is primarily responsible for the payment of liability benefits resulting from damages caused by the driver of a rented car.

In *State Farm Mut Automobile Ins Co v Enterprise Leasing Co*, 206 Mich App 7; 520 NW2d 663 (1994), State Farm insured Ladonna Teasley under a personal automobile insurance policy. When her vehicle was damaged and in the repair shop, she rented a car from the self-insured Enterprise Leasing Company. Enterprise has a policy of not renting cars to persons under twenty-five unless they have their own insurance. Because Teasley was less than twenty-five years old, Enterprise confirmed the existence of her policy with State Farm before renting a vehicle to her.

The rental agreement signed by Teasley contained the following provision:

> By renter's and owner's representatives signature, this provision is made a part of the rental agreement. No insurance or protection is provided by owner—renter provides all insurance. Renter warrants that he has a valid policy of auto insurance covering rental vehicle for collision, comprehensive, and liability; and is not an assigned risk.

Both parties signed the agreement directly below this provision. Teasley was then involved in an accident while driving the rental car. State Farm and Enterprise paid the settled claims resulting from the accident, and State Farm brought suit to determine which

of them was responsible for providing residual liability insurance.

In *Enterprise Leasing Co v Sako*, 207 Mich App 422; 526 NW2d 21 (1994), State Farm Mutual Automobile Insurance Company insured Majid Sako's personal automobile. When his car was inoperable because of a collision, he rented a vehicle from Enterprise Leasing Company. Enterprise is self-insured, with an excess liability policy for damages over $500,000 from an outside insurer, Travelers Insurance Company. The rental agreement executed by Enterprise and Sako included a provision reading:

> If Renter or other authorized driver is in compliance with all provisions of this agreement, and is between 25 and 70 years old, Owner's financial responsibility extends to Renter and other drivers named on this agreement and approved by Owner for third party claims arising from the use of the car as required by Motor Vehicle Minimum Financial Responsibility Laws of the state where the car is operated, unless this agreement requires Renter to provide such coverage. Renter is responsible for damage or loss to property transported by or in the car.

The back of the contract also contained a separate provision, which was not executed by the parties, stating:

> By renter's and owner's representatives signature, this provision is made a part of the rental agreement. No insurance or protection is provided by owner—renter provides all insurance. Renter warrants that he has a valid policy of auto insurance covering rental vehicle for collision, comprehensive, and liability; and is not an assigned risk.

Sako was then involved in an accident while driving the rental car. Enterprise and Travelers paid $593,321.79 to settle the resulting three lawsuits. They

then brought suit against State Farm and Sako to recover their losses, claiming that State Farm was obligated to indemnify Enterprise and provide primary coverage.

In *Auto Club Ins Ass'n v Snappy Car Rental* (hereinafter *Snappy II*), ACIA insured Robert Daniel's personal vehicle. While it was being repaired as a result of vandalism, he rented a vehicle from Snappy Car Rental, which is self-insured. The rental agreement required the renter to select between two choices regarding insurance coverage:

[X][1]    This vehicle is *not covered* for bodily injury or property damage insurance by Snappy and coverage *shall* be provided by renter or renter's existing insurance.

Renter's Initials  <u>R E D</u>[2]

---

[ ]    This vehicle *is covered* for bodily injury and property damage insurance by Snappy with limits of coverage equal to the minimum statutory requirements for financial responsibility for the state of rental.

Renter's Initials  _____

Daniel was then involved in an accident while driving the rental car, resulting in two tort actions against him and Snappy. Snappy refused to defend, and tendered the defense of the actions to ACIA. ACIA filed a declaratory action, seeking a determination that Snappy was the primary insurer.

---

[1] The box next to this option had been checked.

[2] Daniel placed his initials in the space provided.

II

A

In deciding these cases, we turn to Michigan's no-fault insurance act, MCL 500.3101 *et seq.*; MSA 24.13101 *et seq.* This Court's interpretation of the no-fault act as it relates to whether an owner or driver must provide coverage is contained in *Citizens Ins Co v Federated Mut Ins Co*, 448 Mich 225, 227; 531 NW2d 138 (1995). In *Citizens*, we were called upon to determine "the validity of a vehicle owner's policy of liability insurance that denies coverage to any permissive user who is otherwise insured for an amount equal to that specified by the no-fault act."

In *Citizens*, the driver insured a personal automobile. When that car was out of service, the driver was provided a "loaner" vehicle by the dealership servicing the car. The dealership was insured by Federated Mutual Insurance Company. The driver was involved in an accident while driving the loaner car and a judgment for damages was entered. Federated claimed that the driver's personal insurer was required to pay the requisite residual liability benefits. This Court disagreed.

The no-fault act provides in pertinent part:

> The owner or registrant of a motor vehicle required to be registered in this state shall maintain security for payment of benefits under personal protection insurance, property protection insurance, and residual liability insurance. Security shall only be required to be in effect during the period the motor vehicle is driven or moved upon a highway. [MCL 500.3101(1); MSA 24.13101(1).]

In *Citizens*, this Court stressed that it is the "*owner or registrant* of a motor vehicle" who must provide

residual liability insurance under the act. 448 Mich
228 (emphasis in the original). Further, this Court
noted that the requisite residual liability insurance
must provide coverage for loss arising from the *use* of
a motor vehicle. MCL 500.3131, 500.3135; MSA
24.13131, 24.13135, cited at 448 Mich 229. This read-
ing of the statute was the basis for this Court's deci-
sion that the owner's insurer was primarily responsi-
ble for paying residual liability benefits.

This Court determined that Federated's policy vio-
lated the no-fault act because it purported to deny
coverage to the driver of the car:

> In a sentence, Federated's insurance policy provides pri-
> mary residual liability coverage only if the driver of a "cov-
> ered" vehicle is uninsured or underinsured. In all other cir-
> cumstances, Federated completely denies residual liability
> coverage for losses arising from the use of a "covered" vehi-
> cle. This Federated cannot lawfully do because the no-fault
> act clearly directs that a policy sold pursuant to the act
> must provide residual liability coverage for *use* of the vehi-
> cle insured. [448 Mich 231.]

Because the vehicle owner was required to actually
provide coverage of the vehicle and its permissive
use, Federated could not issue an insurance policy
that did not provide that coverage. In the instant
cases, the owner of each vehicle is a car rental com-
pany, not a service dealership. Also, the drivers in
these cases signed rental agreements purporting to
make their own insurance primary. Although we
acknowledge these factual distinctions, we hold that
the car rental companies must provide primary insur-
ance coverage for liability arising out of the use of
their vehicles. We are no longer convinced that a dis-
tinction between a "loaner" car and a rental car can

be sustained, and we will not permit a permissive user to bind the driver's insurer even if doing so would not violate the no-fault law.

B

In *Citizens*, this Court determined that it was not necessary to overrule *State Farm Mut Automobile Ins Co v Snappy Car Rental* (hereinafter *Snappy I*), 196 Mich App 143; 492 NW2d 500 (1992). Our decision to let *Snappy I* stand was the result of an attempt to distinguish the facts of the cases. That is a distinction we no longer feel is sustainable. The distinction was based on the premise that "Federated's insurance policy attempts to unilaterally dictate the respective insurance obligations of a vehicle owner and those who may use the insured vehicle," while Snappy's rental contract permitted the permissive user voluntarily to elect to allocate coverage to the user's insurer. 448 Mich 233-234. We now conclude that a rental car contract is no more voluntary or mutual than the dealership's policy at issue in *Citizens*.

In *Citizens*, Federated attempted to deny coverage, thus forcing the driver's insurers to provide coverage. The car rental companies in this case similarly force a choice. A driver can either sign an agreement stating that the driver's insurance will be primary, or the driver can agree to pay an extra fee to the car rental company for insurance coverage. The driver is not informed that the car rental company, as the owner, is required by law to carry insurance on the vehicle that covers any permissive user.[3] The owner cannot

---

[3] Snappy's rental agreement goes even further, and states that "if renter's insurance fails for any reason to provide coverage, as required

shift that responsibility to another party. Just as Federated was required to provide insurance coverage for permissive users in *Citizens*, we now hold that a car rental company, like any other car owner, must obtain insurance coverage for permissive users of its vehicles.

Further, subsequent developments in the case law have convinced us that the effect of leaving *Snappy I* intact, even if the distinction could be sustained, would be to eviscerate the intended effect of *Citizens*. In *Citizens*, we spoke strongly about the importance of placing the burden of providing primary liability coverage on vehicle owners, as intended by the Legislature. In considering the possibility of permitting owners to shift that responsibility, we held:

> To construe the Legislature's silence in that manner would undermine the dominant principle expressly embodied by the no-fault act: vehicle owners and their insurers are responsible for bearing the costs of injuries caused by the permissive use or operation of the vehicle. . . . [W]e think it is reasonable to conclude that the owner or registrant of the vehicle has the primary duty to provide residual liability insurance. [448 Mich 235.]

The gravamen of our holding in *Citizens* is that the no-fault act requires car owners to be primarily responsible for insurance coverage on their vehicles. However, the car rental companies have been largely successful in avoiding that responsibility, as demonstrated by the Court of Appeals decisions in these cases. Under *Snappy I*, the Court of Appeals found

herein, renter shall be solely responsible," suggesting—falsely—that Snappy was not required to insure the vehicle and that Snappy in fact had not insured the vehicle.

that it was required to permit car owners to shift the primary responsibility for providing coverage for the use of their vehicles to the driver and the driver's insurer. Because this violates the intent of the no-fault act, we overturn *Snappy I* to the extent that it holds that car owners may avoid primary responsibility for vehicle insurance coverage by agreeing to allocate that responsibility to the driver or the driver's insurer.

C

Even if the driver could make a voluntary election to allocate the responsibility for coverage to the driver's insurer, the resulting agreement to allocate would still be void. Enforcing such an agreement would permit the driver to unilaterally dictate the insurance obligations of the parties. Those obligations are a matter of contract, and cannot be unilaterally reassigned.[4] In *Citizens*, we declined to permit an owner's insurer to dictate those obligations. We will not permit a vehicle driver to dictate them here. Under the terms of the insurance contracts,[5] the driver cannot bind the insurance company that issued the driver's policy of coverage for a personal automobile to provide coverage for another car.

The driver cannot defeat the provisions of the no-fault act by stating that the owner need not pay insurance. Because the driver cannot bind the driver's

---

[4] Enterprise in *State Farm* did verify that Teasley had a valid insurance policy with State Farm. However, we decline to find that a brief telephone verification of coverage is the equivalent of a binding agreement between State Farm and Enterprise that State Farm would be primarily liable for coverage of the rental car.

[5] The two State Farm policies provided that "there is no coverage . . . for liability assumed by the insured under any contract or agreement." The ACIA policy stated that "No change or waiver may be effected in this policy except by endorsement issued by us."

insurer, a driver who agreed to shift coverage would remain solely liable for damages caused by use of the vehicle. The rental car would be left uninsured under the terms of the rental agreement stating that the owner provides no insurance. This lack of coverage violates the no-fault act. Even though an injured party could attempt to obtain compensation from the driver, the no-fault act is intended to protect injured parties from having to pursue such suits. Even if the driver qualified as self-insured, we would not allow the rental car companies to avoid the Legislature's intent that a vehicle owner be primarily responsible for providing coverage. Just as the car rental company cannot shift liability to a driver's insurer, it cannot shift liability to a driver personally. Either shift of responsibility away from the owner would violate the act because it requires owners to provide primary coverage. We accordingly hold that the car rental companies and their insurers are required to provide primary residual liability coverage for the permissive use of the rental cars, up to their policy limits or the minimum required by statute.

III

The drivers' personal insurance policies in *State Farm* and *Sako* contain identical "car business exclusions" that limit or exclude liability coverage in certain situations. The provisions specify:

> If a temporary substitute car, a non-owned car or trailer designed for use with a private passenger car has other coverage on it, this coverage is excess. This coverage shall not apply:
>
> a. if the vehicle is owned by any person or organization in a car business; and

b. if you or the owner has other coverage that applies in whole or in part as primary, excess or contingent coverage.

The policies define "car business" as "a business or job where the purpose is to sell, lease, repair, service, transport, store or park land motor vehicles or trailers." They also define "temporary substitute car" as

a car not owned by you or your spouse, if it replaces your car for a short time. Its use has to be with the consent of the owner. Your car has to be out of use due to its breakdown, repair, servicing, damage or loss.

This Court must determine the effect of State Farm's escape clause. The parties do not dispute that the rental cars are temporary substitute cars under the terms of the policies, rented and used by the drivers because their cars required service. If Enterprise Leasing Company is a "car business" as it is defined in the policies, State Farm is not required to provide any coverage. If Enterprise is not a "car business," then State Farm is required to provide excess coverage, up to its policy limits, over the primary coverage provided by Enterprise.[6]

State Farm argues that the term "lease" in the policy definition of "car business" is equivalent to the

---

[6] This is the situation in *Snappy II*. The driver's insurance policy with ACIA provided:

With respect to an other car, temporary substitute or replacement, insurance afforded under this Part is excess over any other collectible car liability insurance.

Because we have just concluded that the rental car company must provide primary liability coverage, the temporary substitute car used by the driver does have "other collectible car liability insurance." It is irrelevant that Snappy is self-insured, not insured through an outside provider. Accordingly, ACIA is responsible for providing excess coverage, up to the limits of its policy.

word "rent," and that Enterprise, which rents cars to
its customers, is a car business for purposes of the
exclusion. Enterprise asserts that the terms "rent"
and "lease" are not synonymous, and that its business
of renting cars is not a "car business." We tend to
agree. The term "lease" as it refers to cars is well
understood to mean a long-term rental, similar to
ownership, and is differentiated from a short-term
rental. This conclusion is supported by the language
of the civil liability act, which specifies that a long-
term lessor is not considered an owner of a vehicle
for insurance purposes, MCL 257.401a; MSA
9.2101(1); whereas someone who leases a vehicle
with exclusive use for more than thirty days is con-
sidered an owner. MCL 257.37; MSA 9.1837.

It is also supported by the reasoning for the exclu-
sion: The individual insureds have purchased insur-
ance assuming each will have one car on the road for
365 days a year. When that car is out of service, and
the insured is driving a rental car, requiring State
Farm to cover that car does not thereby extend the
liability for which State Farm contracted. It is still
responsible only for one driver of one car.

To the extent that there is ambiguity in the policy
meaning of "lease," it is resolved in favor of Enter-
prise. Because State Farm prepared the form insur-
ance contracts, any ambiguity must be strictly con-
strued against it. As this Court stated in *Raska v
Farm Bureau Ins Co*, 412 Mich 355, 362; 314 NW2d
440 (1982):

> If a fair reading of the entire contract of insurance leads
> one to understand that there is coverage under particular
> circumstances and another fair reading of it leads one to
> understand there is no coverage under the same circum-

stances the contract is ambiguous and should be construed against its drafter and in favor of coverage.

Support for this conclusion can be found in the law of other states that have considered the same question.[7] As noted by the Court of Appeals in *Snappy I*, in *Ins Car Rentals v State Farm Mut Automobile Ins Co*, 152 Ill App 3d 225, 235; 504 NE2d 256 (1987), the Illinois appellate court was faced with an identical State Farm car business exclusion. That court noted that the definition of "car business" in the policy

> does not include the rental of cars. Rental differs from a lease in that a rental is for a short period of time. Furthermore, rental can be related to borrowing for a price, whereas leasing is more analogous to ownership because payments are made periodically in order to possess the car as if it were owned. [Citation omitted.]

That court also stressed that the policy affirmatively stated that there was coverage for a temporary substitute car. Because temporary substitute cars are most often obtained from a car rental company, to deny coverage of them would defeat the reasonable expectations of the insured that there would be coverage. Because there is ambiguity created by including provisions stating both that temporary substitute cars are covered and that cars owned by a car business are not, the court held that there was coverage.

Similarly, in *State Farm Mut Automobile Ins Co v Bogart*, 149 Ariz 145, 153; 717 P2d 449 (1986), the Arizona Supreme Court found that because "Hertz is

---

[7] This reasoning is not universally accepted, e.g., *Royal Indemnity Co v Shull*, 665 SW2d 345 (Mo, 1984) (a policy for a vehicle owned by an organization in the "car business" excluded coverage for a rental car). However, we adopt it in the instant case.

in the car rental business, . . . it is not abundantly
clear that it falls within the [car business] exclusion
at all." Accordingly, that court declined to find that
the trial court "erred in concluding that the exclusion
relied on by State Farm was ambiguous when the pol-
icy is considered as a whole, as it must be." *Id.*

Yet more support is found in the fact that it has
been ten years since other states have held that the
car business exclusion did not exclude rental car
companies. State Farm did not act during that time to
amend the definition to more clearly place rental car
companies within the car business exclusion. Accord-
ingly, we hold that the exclusion does not apply, and
State Farm must provide excess coverage.[8]

### CONCLUSION

The no-fault act makes the owner or registrant of a
vehicle primarily responsible for providing liability
insurance coverage for the use of the car by any per-
missive user. Permitting an owner to shift that liabil-
ity to the users of the vehicle would violate the intent
of the act. Furthermore, even if the act permitted
such shifting, a driver cannot unilaterally bind the
driver's insurer to provide primary coverage. Any
agreement to do so is void, which would leave the car
uninsured if the·car owner were not required to pro-
vide coverage. In each of these three cases, the car

---

[8] This is a departure from our conclusion in *Citizens* that the car busi-
ness exclusion encompassed rental car companies. 448 Mich 237. How-
ever, as stated above, we are now convinced upon closer examination
that this result is mandated by the terms of the contracts. Further support
is found in our current emphasis that the car owner is required to provide
coverage, creating a distinction between renting and leasing. To the casual
reader, "leasing" a car means something very different than "renting" a
car.

rental company and, when applicable, the company's insurer, is obligated to provide primary residual liability coverage for damages arising from the use of the vehicle by a permissive user. The driver's insurer is required to provide excess coverage as specified in the individual policies, up to the policy limits.

*State Farm v Enterprise* and *ACIA v Snappy*, reversed. *Enterprise v Sako*, affirmed in part and reversed in part. The cases are remanded to allocate the liability between the primary insurers and excess insurers.

LEVIN, CAVANAGH, BOYLE, RILEY, and WEAVER, JJ., concurred with BRICKLEY, C.J.

WEAVER, J., took no part in the decision of *State Farm v Enterprise.*

MALLETT, J. (*dissenting*). Although I agree with the majority's presentation of the facts and the issue in these cases, I find it necessary to dissent. Little more than one year ago, this Court, in *Citizens Ins Co v Federated Mut Ins Co*, 448 Mich 225; 531 NW2d 138 (1995), refused to reverse the Court of Appeals decision in *State Farm Mut Automobile Ins Co v Snappy Car Rental, Inc*, 196 Mich App 143; 492 NW2d 500 (1992). Just last year, we unanimously[1] stated:

> Our refusal to sanction Federated's attempt to circumscribe the coverage required by the no-fault act, does not compel us to overrule the Court of Appeals decision in *State Farm* [*supra*], as suggested by the dissenting panelist in *Citizens, supra. Snappy* is factually distinguishable from the instant cases. [448 Mich 233.]

---

[1] The *Citizens* opinion was signed by six justices. Justice WEAVER did not participate.

Because *Snappy Car Rental* involved the same issue presented in these cases, I think it only wise and prudent to adhere to our decision in *Citizens*. The factual distinction made by this Court in *Citizens* remains valid. I therefore disagree with the position adopted today by the majority and would affirm the decisions of the Court of Appeals.