NOT RECOMMENDED FOR PUBLICATION
File Name: 16a0609n.06

No. 16-1210

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Nov 17, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| WILLIAM LEE MAHER and SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA, | ) ) ) ) | |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| FEDERATED SERVICE INSURANCE COMPANY et al., | ) ) ) | |
| Defendants-Appellants. | ) | |

BEFORE:     MOORE, ROGERS, and SENTELLE, Circuit Judges.[*]

SENTELLE, Circuit Judge.   This case involves an automobile accident and a dispute over which insurer must defend and indemnify the driver against claims arising out of that accident: the vehicle owner's insurer or the driver's insurer.   Under Michigan's No-Fault Act, M.C.L. § 500.3101(1), vehicle *owners* must provide primary residual liability coverage for their vehicles and all permissive users of their vehicles, and any provision in an insurance policy that purports to shift that responsibility to drivers and their insurers is void.   In this case, the district court determined that, pursuant to Michigan law, the owner's insurer had the sole primary duty to defend and indemnify the driver up to the limits of the policy.   We affirm, except as to the

---

[*] The Honorable David B. Sentelle, Senior Circuit Judge for the United States Court of Appeals for the District of Columbia Circuit, sitting by designation.

extent of the owner's insurer's liability, holding that the owner's insurer is obligated to provide coverage only up to the statutory minimum.

I.

In this priority dispute between two insurance companies, the relevant facts are undisputed. West Michigan Auto Auction ("West Michigan") and AON Automotive Group, Inc. d/b/a Brooklyn Ford ("Brooklyn Ford") had a business arrangement that involved West Michigan's employees driving Brooklyn Ford's vehicles. As the district court explained:

> Brooklyn Ford has a contract with West Michigan . . . to auction vehicles Brooklyn Ford owns. Before an auction, West Michigan . . . sends an employee to pick up the vehicles from Brooklyn Ford and take[] them to the auction site.

*Maher v. Federated Serv. Ins. Co.*, 143 F. Supp. 3d 663, 664–65 (E.D. Mich. 2015).

On August 1, 2013, West Michigan sent William Maher to transport one of Brooklyn Ford's vehicles to West Michigan's auction site. While driving the vehicle, Maher rear-ended Melissa Strang's vehicle on Interstate 94 in Jackson County, Michigan. It is undisputed that at the time of the accident, Maher was acting within the scope of his employment for West Michigan and had Brooklyn Ford's permission to drive the vehicle.

Because of the injuries she suffered in the accident, Strang filed suit against Maher and Brooklyn Ford, alleging that Maher had operated the vehicle in a reckless and negligent manner and that Brooklyn Ford was vicariously liable. Selective Insurance Company ("Selective"), which insured West Michigan, provided a defense to Maher.

Selective also tendered Maher's defense and indemnity with respect to the underlying case to Brooklyn Ford and Federated Service Insurance Company ("Federated"), which had issued a commercial package policy to College Chevrolet Buick Pontiac LLC that identified Brooklyn Ford as an "Additional Named Insured." The coverage provided to Brooklyn Ford

under the policy is subject to certain limitations. At issue in this case is the policy's "Who Is An Insured" definition, which includes an Auto Sales Exception providing that anyone using a "covered auto" with Brooklyn Ford's permission is an insured, except for

> [s]omeone using a covered "auto" while he or she is working in a business of selling, servicing or repairing "autos" unless that business is [Brooklyn Ford's] "garage operations."

Federated explains that this exclusionary provision precludes coverage for any permissive user of Brooklyn Ford's vehicles if the user is working for another commercial automotive business at the time of an accident.

Because Maher was working for West Michigan at the time of the accident, Federated claimed that Maher did not qualify as an "Insured" based on the Auto Sales Exception and refused to defend Maher in the underlying case. Selective disputed Federated's denial, however, arguing that Michigan's No-Fault Act (the "No-Fault Act"), M.C.L. § 500.3101(1), which provides that vehicle owners must provide residual liability insurance for losses arising from the use of their vehicles, required Federated to defend and indemnify Maher. *See Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001); *State Farm Mut. Auto. Ins. Co. v. Enterprise Leasing Co.*, 549 N.W.2d 345, 348 (Mich. 1996). Federated later agreed to defend Maher subject to a full reservation of rights.

In response, Maher and Selective filed suit in Michigan state court against Federated, Brooklyn Ford, and Strang. Maher and Selective sought a declaratory judgment that the Auto Sales Exception was void as contrary to the No-Fault Act and that Federated had the sole primary duty to defend and indemnify Maher up to its policy limits with respect to the underlying case. On March 4, 2015, Federated removed the action to the United States District Court for the Eastern District of Michigan on the basis of diversity jurisdiction and asserted a

counterclaim requesting a declaratory judgment that it had no duty to defend or indemnify Maher based on the Auto Sales Exception.

After Federated filed its answer and counterclaim, Selective filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Selective did not dispute that Maher fell within the policy's Auto Sales Exception, but instead asserted that the exception was void as a matter of law because it would exclude from coverage an entire class of permissive users—namely, "those permissive users in the business of selling autos separate from Brooklyn Ford's 'garage operations.'" Selective also argued that Federated had a duty to defend up to the limits of its policy, rather than up to the statutory minimum, because the exclusionary provision was invalid. Finally, Selective urged the district court to reject any argument that Federated's coverage obligations were "co-primary" with any other insurance policies available to Maher and hold that Federated must provide "sole primary coverage."

The district court granted Selective's motion. *See Maher v. Federated Serv. Ins. Co.*, 143 F. Supp. 3d 663 (E.D. Mich. 2015). Explaining that the No-Fault Act "requires that a policy of auto insurance issued to the owner of a vehicle must provide primary insurance for residual liability arising from the permissive use of the vehicle," the district court held that the Auto Sales Exception was unenforceable because it would "preclude coverage to a certain class of permissive users." *See id.* at 666–67. The district court, relying on decisions from the Michigan Court of Appeals, then determined that Federated was "responsible for Maher's defense and indemnity up to the limits of the policy." *See id.* at 668–69. Finally, the district court held that Federated had the sole primary duty to defend and indemnify, regardless of the terms of the Selective policy covering Maher. *Id.* at 669. The district court's decision applied only to

Federated's primary policy, and not to Federated's umbrella policy. *See Maher v. Federated Serv. Ins. Co.*, No. 15-10790, 2016 WL 301955 (E.D. Mich. Jan. 25, 2016).

Federated appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291.

II.

A court that lacks subject-matter jurisdiction has "no authority to sit in judgment of anything else." *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 778 (2000) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–102 (1998)). Therefore, we have an obligation to consider jurisdiction in every case, even if the district court never considered its own jurisdiction. *Hampton v. R.J. Corman R.R. Switching Co.*, 683 F.3d 708, 710–11 (6th Cir. 2012); *see also Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) (noting that "parties may not establish subject matter jurisdiction in the federal courts by consenting to it" (citing *Steel Co.*, 523 U.S. at 93)).

Maher, a citizen of Michigan, and Selective, an Indiana corporation with its principal place of business in New Jersey, filed suit in Michigan state court against three defendants: (1) Federated, a Minnesota corporation; (2) Brooklyn Ford, a Michigan corporation with its principal place of business in Michigan; and (3) Strang, a citizen of Michigan. As noted, Federated removed the case to federal court on the basis of diversity jurisdiction. But when a federal court's jurisdiction is predicated on the parties' diversity of citizenship, removal is permissible only if complete diversity exists between all named plaintiffs and all named defendants. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 83–84 (2005); *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 492 (6th Cir. 1999). In its Notice of Removal, Federated acknowledged that complete diversity was lacking but argued that the inclusion of Brooklyn Ford and Strang as defendants was "not an impediment to removal . . . pursuant to the doctrine of fraudulent

joinder." *See Coyne*, 183 F.3d at 493 ("[T]his Court has recognized that fraudulent joinder of non-diverse defendants will not defeat removal on diversity grounds.").

Rather than "expressly dismiss the 'sham defendants' before proceeding with the case," *Isaacs v. Broido*, 358 F. App'x 874, 876–77 (9th Cir. 2009), the district court granted Selective's motion for judgment on the pleadings without addressing the presence of the non-diverse defendants. In fact, the district court ordered Brooklyn Ford and Strang, the non-diverse defendants, to respond to Selective's motion. Although the district court exceeded its limited jurisdiction under 28 U.S.C. §§ 1332 and 1441, we do not believe that remand is warranted under these circumstances.

Pursuant to Federal Rule of Civil Procedure 21, we have the authority to dismiss dispensable non-diverse parties. *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832–38 (1989). In this case, Maher and Selective sought a declaratory judgment "[t]hat Federated [wa]s obligated and ha[d] a duty" to defend and indemnify Maher in the underlying case but did not seek any relief against Brooklyn Ford or Strang. Indeed, Maher and Selective stated that Brooklyn Ford and Strang were joined as defendants "only to the extent that [they], or any other defendant, believe[] or assert[] that [they are] necessary part[ies] to this action." Therefore, after reviewing the record and "carefully consider[ing] whether . . . dismissal . . . will prejudice any of the parties in the litigation," *see id.* at 837–38, we conclude that both Brooklyn Ford and Strang are dispensable parties and order that they be dropped from the case. *See Yuille v. Am. Home Mortg. Servs., Inc.*, 483 F. App'x 132, 134 n.1 (6th Cir. 2012); *cf. Curry v. U.S. Bulk Transp., Inc.*, 462 F.3d 536, 541–43 (6th Cir. 2006) (rejecting defendant's Rule 21 request because the plaintiff "wished to bring th[e] lawsuit *against all three defendants* in state court" and granting the request would be "against [the plaintiff's] wishes" and would "harm" the

plaintiff (emphasis added)). While it is true that courts of appeals have exercised their Rule 21 authority when "the triggering factor" is the plaintiff's request to dismiss the nondiverse defendants and proceed with the case in federal court, *see Curry*, 462 F.3d at 542–43, this is not the only situation in which appellate courts have exercised this authority. *See, e.g.*, *Gorfinkle v. U.S. Airways, Inc.*, 431 F.3d 19, 22–23 (1st Cir. 2005) (dismissing dispensable nondiverse defendant to preserve diversity jurisdiction, even though plaintiff asked appellate court to remand case to state court, because "dismissal w[ould] not prejudice any of the remaining parties"); *Ingram v. CSX Transp., Inc.*, 146 F.3d 858, 862–63 (11th Cir. 1998) (same). Accordingly, we now proceed to the merits.

## III.

We review *de novo* the district court's decision granting Selective's motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008). A Rule 12(c) motion may be granted only when no material issue of fact exists and the movant is "clearly entitled" to judgment as a matter of law. *Id.* (citations and internal quotation marks omitted).

## IV.

Federated raises three arguments on appeal. First, Federated contends that the district court erred when it "refused to apply the Federated policy as written" and invalidated the Auto Sales Exception as contrary to the No-Fault Act. Second, Federated argues that even if the Auto Sales Exception was void, the district court should have limited Federated's coverage obligations to the statutory minimum, *see* M.C.L. § 500.3009(1), rather than to the policy limits. Third, Federated asserts that, because Selective's policy was not included in the record, the district court could not properly decide whether Selective's policy provided for co-primary coverage

and, therefore, Selective was not entitled to judgment on the pleadings. We address each argument in turn.

A.

Federated's coverage obligations in the underlying lawsuit, if any, depend on the validity of the Auto Sales Exception. The No-Fault Act mandates that vehicle owners provide residual liability insurance for losses arising from the use of their vehicles. *See* M.C.L. §§ 500.3101(1), 500.3131, 500.3135; *State Farm Mut. Auto. Ins. Co. v. Enterprise Leasing Co.*, 549 N.W.2d 345, 348 (Mich. 1996). As noted, the "Auto Sales Exception" in Federated's policy excludes from coverage any permissive user of a Brooklyn Ford-owned vehicle if that user is "working in a business of selling, servicing or repairing 'autos' unless that business is [Brooklyn Ford's] 'garage operations.'" It is undisputed that Maher was working for West Michigan at the time of the accident and Selective appears to concede that, if enforceable, the Auto Sales Exception precludes coverage for Maher. We must therefore determine whether the Auto Sales Exception in Federated's policy conflicts with the No-Fault Act.

The Michigan Supreme Court has consistently focused on the *ownership* of the vehicle in interpreting the No-Fault Act's coverage requirements and has rejected any attempt by owners and their insurers to shift the responsibility for providing coverage to drivers and their insurers. Specifically, the court has stressed that the No-Fault Act "requires the *owner* . . . of a motor vehicle to purchase an automobile insurance policy that provides . . . 'residual liability insurance'" to cover losses "caused by or arising from the '*use* of a motor vehicle.'" *Citizens Ins. Co. of Am. v. Federated Mut. Ins. Co.*, 531 N.W.2d 138, 139–40 (Mich. 1995) (quoting, *inter alia*, M.C.L. §§ 500.3101(1), 500.3131, 500.3135). The court has held that interpreting the No-Fault Act in this manner is consistent with "the dominant principle expressly embodied by

the [N]o-[F]ault [A]ct" and advances the intent of the legislature. *Enterprise Leasing*, 549 N.W.2d at 349 (quoting *Citizens*, 531 N.W.2d at 142). Accordingly, "*any . . .* provision" that "purport[s] to shift the responsibility for providing primary residual liability coverage on the vehicle from the owner to the driver and the driver's insurer" violates the intent of the No-Fault Act and is "void." *Id.* at 347, 352 (emphasis added); *see also Fuller v. GEICO Indem. Co.*, 872 N.W.2d 504, 509–10 (Mich. Ct. App. 2015) (noting that Michigan courts have answered the question of "whether the owner/registrant can shift the burden of maintaining residual liability insurance" with "a resounding 'No'").

Federated acknowledges that the Auto Sales Exception precludes coverage for any permissive user who is driving a Brooklyn Ford-owned vehicle while working for another commercial automotive business at the time of an accident. In other words, the Auto Sales Exception precludes coverage for an entire class of permissive users. Nevertheless, Federated argues that the Auto Sales Exception in this case is different. Federated contends that "sophisticated business entities," such as West Michigan and Brooklyn Ford, should be free to allocate risk of loss by shifting the responsibility for primary residual liability coverage to another commercial insurance policy. Enforcing the Auto Sales Exception in this case, Federated argues, will not frustrate the "goal" or "purpose" of the No-Fault Act because coverage would still be available to protect both Maher and Strang under Selective's policy. Federated's argument is unavailing.

As the district court recognized, *see Maher*, 143 F. Supp. 3d at 667, Michigan courts have not interpreted the No-Fault Act as making distinctions based on the status of the driver or his insurer. *See, e.g.*, *Enterprise Leasing*, 549 N.W.2d at 348–50 (acknowledging "factual distinctions" between cases but rejecting that as a basis for enforcing exclusionary provision);

*Auto-Owners Ins. Co. v. Martin*, 773 N.W.2d 29, 36 (Mich. Ct. App. 2009) (recognizing "valid distinction" between exclusionary provision at issue and those voided in previous cases but holding that the distinction was immaterial). Instead, the Michigan Supreme Court has "spoke[n] strongly about the importance of placing the burden of providing primary liability coverage on . . . *owners*," and has used expansive language in holding that "*any* . . . provision" that attempts to shift this responsibility away from the owner to "*any* permissive user" or his insurer is void. *See Enterprise Leasing*, 549 N.W.2d at 347, 349–50, 352 (emphases added).

Federated's reliance on *Amerisure, Inc. v. Brennan*, No. 270736, 2006 WL 3733283 (Mich. Ct. App. Dec. 19, 2006), is misplaced. Federated contends that the court in *Amerisure* "enforced" an exclusionary provision similar to the Auto Sales Exception. We disagree. As an initial matter, we are not bound by an unpublished opinion from the Michigan Court of Appeals. *See Bennett v. MIS Corp.*, 607 F.3d 1076, 1095–96 (6th Cir. 2010). On the merits, *Amerisure* is distinguishable because it primarily involved whether the driver exceeded the scope of his permitted use, and not the enforceability of the exclusionary provision. *See* 2006 WL 3733283, at *2–3. In this case, "there is no dispute that Maher was a permissive user of the Brooklyn Ford owned vehicle." *Maher*, 143 F. Supp. 3d at 668. More importantly, as Federated concedes, the *Amerisure* court did not address the Act and, as explained above, the Michigan Supreme Court has expressly held that *any* provision that purports to shift the responsibility for providing primary residual liability coverage from the owner to the driver and the driver's insurer is void. *Enterprise Leasing*, 549 N.W.2d at 347, 352. Therefore, *Amerisure* does not support Federated's argument.

The Auto Sales Exception in Federated's policy precludes coverage for an entire class of permissive users and purports to shift the responsibility for providing primary residual liability

coverage to Maher and Selective. We conclude that the Auto Sales Exception is void and Federated must therefore defend and indemnify Maher with respect to the underlying lawsuit.

B.

Because we conclude that the Auto Sales Exception is invalid, "we must next determine the amount of residual liability coverage that Federated must provide." *Citizens*, 531 N.W.2d at 142. When an exclusionary provision in an insurance contract "conflict[s] with the [N]o-[F]ault [A]ct and, thus, violate[s] public policy," Michigan courts are "obligated to construe" the policy in a manner than renders it "compatible" with the No-Fault Act. *Corwin v. DaimlerChrysler Ins. Co.*, 819 N.W.2d 68, 76–77 (Mich. Ct. App. 2012) (citing *Cruz v. State Farm Mut. Auto. Ins. Co.*, 648 N.W.2d 591, 599 (Mich. 2002); *Enterprise Leasing*, 549 N.W.2d at 352; *Citizens*, 531 N.W.2d at 143) (internal quotation marks omitted)). Therefore, when a provision is void because it is against the policy of the No-Fault Act, the reformed policy must provide the statutorily required coverage. *Citizens*, 531 N.W.2d at 142 (citing *State Farm Mut. Auto. Ins. Co. v. Shelly*, 231 N.W.2d 641, 642 (Mich. 1975)). "[S]ince the exclusionary clause in [Federated's] policy is in conflict with the liability coverage required by the [N]o-[F]ault [A]ct, the language of the statute must prevail with the result that the attempted exclusion is invalidated and the policy must be read so as to provide the required coverage." *State Farm Mut. Auto. Ins. Co. v. Ruuska*, 314 N.W.2d 184, 188 (Mich. 1982).

The Michigan Court of Appeals has held insurers liable up to the limits of the policy, rather than the statutory minimum, when the insurers "knew or should have known" that an exclusionary provision in a policy was void as contrary to the No-Fault Act. *Martin*, 773 N.W.2d at 40 (citing *Farmers Ins. Exch. v. Kurzmann*, 668 N.W.2d 199, 203–06 (Mich. Ct. App. 2003)). Because Federated was relying on an invalid exclusion, the district court held that

Federated was liable up to the limits of the policy. *See Maher*, 143 F. Supp. 3d at 668–69. The district court erred.

As an initial matter, this case was resolved on Selective's Rule 12(c) motion for judgment on the pleadings, and therefore, there is no evidence in the record that Federated actually knew that the Auto Sales Exception would be void. *Cf. Kurzmann*, 668 N.W.2d at 205 (noting that insurer's agent "expressed her understanding that [the insurer] was obligated to provide the stated coverage"). And, while Michigan courts have invalidated other exclusionary provisions that were contrary to the No-Fault Act, the case law does not clearly suggest that Federated should have known that the Auto Sales Exception would be void. In *Flint Auto Auction, Inc. v. Universal Underwriters Insurance Co.*, No. 12-14793, 2013 WL 6409984 (E.D. Mich. Dec. 9, 2013), the primary issue was the ownership of the vehicle, and not the validity of a particular exclusionary provision. *See id.* at *3–7. In *Citizens Insurance Co. of America v. Chrysler Insurance Co.*, No. 219332, 2001 WL 1135298 (Mich. Ct. App. Sept. 18, 2001), neither party challenged the trial court's holding that the exclusionary provision was void or the coverage reinstated by the trial court, meaning that neither issue was properly before the court. *Id.* at *6 & n.5. In the other cases identified by Selective and the district court as applying the policy limits rather than the statutory minimum, the provisions in question had been expressly declared void by the Michigan Supreme Court prior to the issuance of the policy, *see Martin*, 773 N.W.2d at 40; *Kurzmann*, 668 N.W.2d at 204, which is not the case with the Auto Sales Exception. Finally, Selective relies on *Farm Bureau General Insurance Co. of Michigan v. Haller*, No. 250272, 2005 WL 957490 (Mich. Ct. App. Apr. 26, 2005), in which the court held that a "criminal acts" exclusion "patently and clearly" violated the "plain language" of a separate provision of the No-Fault Act requiring coverage for intentionally caused harm. *Id.* at *2, *5

(citing M.C.L. § 500.3135(3)(a)). But Selective does not point to any provision of the No-Fault Act that patently and clearly requires Federated to provide the coverage denied by the Auto Sales Exception. In short, none of Selective's proffered cases supports the conclusion that Federated should have known that the Auto Sales Exception would be void.

The Michigan Supreme Court has held that when an exclusionary provision in an insurance policy violates the No-Fault Act, the reinstated coverage is limited to the statutory minimum. While the Michigan Court of Appeals has applied a knowledge exception to this general rule, that exception is not applicable to the facts of this case. Accordingly, the reinstated coverage on Federated's policy is limited to the amount required by the No-Fault Act.

C.

Federated's final argument concerns the district court's holding that Federated must provide sole primary coverage, even though Selective's policy was not included in the record before the district court. *See Maher*, 143 F. Supp. 3d at 669. Federated contends that the fact that its policy applies on a primary basis "does not answer the question of whether Selective is also required to provide primary coverage based on the terms and conditions of its own policy." We agree with the district court that Federated's argument "lacks merit." *Maher*, 143 F. Supp. 3d at 669.

While Federated argues that the No-Fault Act does not preclude other insurers from also agreeing to provide primary coverage, it fails to point to any authority supporting its argument. And, contrary to Federated's contention that Michigan courts have not addressed "whether another insurer might owe co-primary coverage . . . based on the terms of its own policy," the Michigan Supreme Court has held that vehicle owners are "primarily responsible" for providing coverage under the No-Fault Act. *Enterprise Leasing*, 549 N.W.2d at 347, 349, 352; *see also*

*Kammers v. Pioneer State Mut. Ins. Co.*, No. 303726, 2012 WL 1368191, at *1 (Mich. Ct. App. Apr. 19, 2012) ("It is well-established . . . that the automobile owner's insurer has first priority for residual liability arising out of the use of that automobile." (citing *Enterprise Leasing*, 549 N.W.2d at 349–50; *Citizens*, 531 N.W.2d at 140–41)). Moreover, the Michigan Supreme Court has expressly held that, even if there are "competing insurers," owners and their insurers must provide primary coverage:

> Moreover, [the owner's insurer's] reinstated coverage is *primary* to any insurance benefits that may be available under policies that the drivers have purchased. Although we acknowledge that the Legislature has remained silent concerning who among competing insurers must provide *primary* residual liability benefits, we refuse to construe that silence as expressly authorizing an owner's insurer . . . to unilaterally dictate the priority of coverage among insurers in a manner that shifts insurance costs to the nonowner of the vehicle. To construe the Legislature's silence in that manner would undermine the dominant principle expressly embodied by the [n]o-[f]ault [a]ct: vehicle owners and their insurers are responsible for bearing the costs of injuries caused by the permissive use or operation of the vehicle. Instead, because the obligation to obtain residual liability insurance is triggered by the obligation to register a vehicle, rather than by the operation of the vehicle, we think it reasonable to conclude that the owner or registrant of the vehicle has the primary duty to provide residual liability insurance.

*Citizens*, 531 N.W.2d at 142.

In light of Michigan's clearly-established law, the absence of Selective's policy from the record did not create a material issue of fact. *See Tucker*, 539 F.3d at 549. The district court was correct in granting Selective's motion for judgment on the pleadings and holding that Federated had the sole primary duty to defend and indemnify Maher.

V.

Based on the foregoing, we affirm the district court's decision holding that, because the Auto Sales Exception is void as a matter of law, Federated has the sole primary duty to defend

and indemnify Maher in the underlying lawsuit, but we reverse its decision as to the extent of Federated's liability.

*So ordered.*

KAREN NELSON MOORE, Circuit Judge, dissenting. Because I believe that the district court lacked jurisdiction, I respectfully dissent. Federated's asserted jurisdictional basis upon removal was 28 U.S.C. § 1332. R. 1 (Notice of Removal ¶ 17) (Page ID #6). As the majority suggests, *see* Majority Op. at 5–6, there does not appear to be complete diversity in this case; Plaintiff Maher and Defendants Brooklyn Ford and Strang are residents and likely citizens of Michigan, R. 1 (Compl. ¶¶ 2, 5–6) (Page ID #12–13). However, as the majority also points out, *see* Majority Op. at 5–6, Federated argued in its notice of removal that Brooklyn Ford and Strang were fraudulently joined, R. 1 (Notice of Removal ¶¶ 13–15) (Page ID #13–15). The district court did not address this argument, and Federated has not pursued a similar argument on appeal. We have remanded similar cases in which the district court enters judgment in the absence of complete diversity and without considering a defendant's fraudulent-joinder argument. *See Probus v. Charter Commc'ns, LLC*, 234 F. App'x 404, 405 (6th Cir. 2007). I do not believe that a different approach from *Probus* is appropriate here, so I would remand so that the district court may resolve the issue of fraudulent joinder.

In addition, I do not believe that we should dismiss Brooklyn Ford and Strang. "Although . . . courts of appeals have the authority to dismiss a dispensable nondiverse party, . . . such authority should be exercised sparingly." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 837 (1989). In the few cases where courts of appeals have exercised such authority, "the triggering factor . . . [has been] the *plaintiff's* motion to enable it to proceed with the case against diverse defendants in federal court." *See Curry v. U.S. Bulk Transp., Inc.*, 462 F.3d 536, 543 (6th Cir. 2006). Likewise, here, Maher chose to bring his declaratory-judgment claim against Brooklyn Ford and Strang, as well as Federated, in state court, *see* R. 1 (Compl. ¶¶ 22–23) (Page ID #15), and Maher was brought into federal court on Federated's

notice of removal, R. 1 (Notice of Removal at 7) (Page ID #7). On appeal, no party has encouraged us to dismiss Brooklyn Ford and Strang. Therefore, it is far from "evident that none of the parties will be harmed by [Brooklyn Ford and Strang's] dismissal." *See Newman-Green, Inc.*, 490 U.S. at 838. I believe that their dismissal is inappropriate.[1]

Finally, because I believe that the district court lacked jurisdiction, I would not address the merits of Maher's appeal, including "the amount of residual liability coverage that Federated must provide." *See Citizens Ins. Co. of Am. v. Federated Mut. Ins. Co.*, 531 N.W.2d 138, 142 (Mich. 1995).

Accordingly, I respectfully dissent.

---

[1]The majority claims that other appellate courts have dismissed nondiverse defendants even when the plaintiff did not so request, citing decisions from the U.S. Court of Appeals for the First and Eleventh Circuits. *See* Majority Op. at 7. However, these cases are distinguishable from this case. In both of the majority's cases, complete diversity existed when the defendants removed to federal court. *See Gorfinkle v. U.S. Airways, Inc.*, 431 F.3d 19, 21 (1st Cir. 2005); *Ingram v. CSX Transp., Inc.*, 146 F.3d 858, 861 (11th Cir. 1998). The plaintiffs then destroyed diversity by filing amended complaints in federal court, in which they added nondiverse defendants. *See Gorfinkle*, 431 F.3d at 21–22; *Ingram*, 146 F.3d at 860. In fact, in *Ingram*, the district court granted the plaintiff's motion to amend her complaint "with the EXPRESS UNDERSTANDING that the addition of a non-diverse defendant [would] not destroy [the] court's diversity jurisdiction which [had] already attached," an understanding that the plaintiff did not share. *Ingram*, 146 F.3d at 861. By contrast, there is not a hint of gamesmanship in this case; Maher named Brooklyn Ford and Strang as defendants in his state-court complaint. *See* R. 1 (Compl. ¶¶ 22–23) (Page ID #15).

More fundamentally, a panel of this court has held that when a plaintiff files a complaint originally in state court, we are not empowered to vest the district court with jurisdiction on removal by dismissing nondiverse defendants if the plaintiff does not so request. *See Curry v. U.S. Bulk Transp., Inc.*, 462 F.3d 536, 543 (6th Cir. 2006). "We are bound by the published decisions of prior panels of this Court." *Soaring Eagle Casino & Resort v. NLRB*, 791 F.3d 648, 662 (6th Cir. 2015). Therefore, as the master of his complaint, *see Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 514–15 (6th Cir. 2003), Maher should be able to enjoy whatever "tactical advantage[s]" he perceives in state court without our interference. *See Newman-Green, Inc.*, 490 U.S. at 838.