# STATE OF MICHIGAN

# COURT OF APPEALS

GREGORY M. FULLER and PATRICE
FULLER,

        Plaintiffs-Appellants,

v

GEICO INDEMNITY COMPANY,

        Defendant-Appellee.

FOR PUBLICATION
March 5, 2015
9:15 a.m.

No. 319665
Wayne Circuit Court
LC No. 12-014065-NF

Before: GLEICHER, P.J., and CAVANAGH and FORT HOOD, JJ.

GLEICHER, P.J.

Nonparty Saundra House rented a vehicle from Lakeside Car Rental while her own vehicle was undergoing routine repairs. She allowed a family friend, plaintiff Gregory Fuller, to drive the rented car and he was involved in an accident. Gregory and his passenger, plaintiff Patrice Fuller, were both injured and believed they were entitled to first-party personal protection insurance (PIP) benefits. As neither owned a vehicle or was covered under a relative's policy, the Fullers sought PIP benefits from the GEICO insurance policy that House had purchased to cover her personal vehicle. Defendant GEICO Indemnity Co. determined that Lakeside owned the rental car and therefore its insurer was responsible for coverage.

The circuit court agreed with GEICO's position and dismissed the Fullers' first-party no-fault action. MCL 500.3101(1) demands that a vehicle's owner or registrant maintain the insurance coverage required by the no-fault act. And our Supreme Court has ruled that a rental agency, as the owner of the vehicle, cannot shift the burden of maintaining mandatory no-fault insurance onto a short-term renter. Accordingly, we affirm.

## I. BACKGROUND

As noted, while House's GEICO-covered personal vehicle was in the shop for repairs, she entered a one-week rental contract for a 2008 Chevy Impala with Lakeside. The rental agreement provided that House's GEICO policy would "be first in priority in payment of any and all personal injury and property damage claims that arise from the [use] of this vehicle." After the Fullers' accident, they decided to file a claim for first-party no-fault benefits with GEICO. GEICO rejected the Fullers' claim and they filed suit seeking a declaration of coverage and a ruling that GEICO had violated the no-fault statute.

-1-

GEICO sought summary dismissal of the Fullers' claims. The circuit court, based on the incorrect assumption that House had entered a long-term rental contract, initially determined that House was required to insure the rental vehicle and that the Fullers were eligible for coverage under the GEICO policy. After further clarification by the parties, however, the court determined that Lakeside remained liable to insure the Impala and its policy was the proper source of PIP benefits for the injured Fullers. The court therefore dismissed the Fullers' action and they filed this appeal.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A motion for summary disposition pursuant to MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). We must review a "motion brought under MCR 2.116(C)(10) by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

We also review de novo matters of statutory interpretation. *Stanton v City of Battle Creek*, 466 Mich 611, 614; 647 NW2d 508 (2002). The goal of statutory interpretation is to discern and give effect to the intent of the Legislature. *Odom v Wayne Co*, 482 Mich 459, 467; 760 NW2d 217 (2008). To that end, the first step in determining legislative intent is the language of the statute. *Id.* If the statutory language is unambiguous, then the Legislature's intent is clear and judicial construction is neither necessary nor permitted. *Id.* [*Barclae v Zarb*, 300 Mich App 455, 466-467; 834 NW2d 100 (2013).]

We review de novo questions of contract interpretation and considerations regarding the legal effect of a contractual provision. *Alpha Capital Mgt, Inc v Rentenbach*, 287 Mich App 589, 611; 792 NW2d 344 (2010). Because a no-fault insurance policy is a contract, the general rules of contract interpretation apply. *Rory v Continental Ins Co*, 473 Mich 457, 461; 703 NW2d 23 (2005). When considering the meaning of policy terms, we must read the whole instrument with the goal of enforcing the parties' intent. *Fresard v Mich Millers Mut Ins Co*, 414 Mich 686, 694; 327 NW2d 286 (1982). Clear and unambiguous provisions of an insurance policy must be enforced according to their plain meanings. *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 354; 596 NW2d 190 (1999).

## III. ANALYSIS

Pursuant to MCL 500.3101(1), Lakeside was required to maintain PIP insurance over the Impala as the vehicle's owner and registrant. Lakeside was prohibited from shifting that burden onto a short-term renter by *State Farm Mut Auto Ins Co v Enterprise Leasing Co*, 452 Mich 25; 549 NW2d 345 (1996). Accordingly, Lakeside's insurer was liable to pay the Fullers' PIP

benefits, not GEICO as the insurer of House's personal vehicle, and the circuit court properly dismissed plaintiffs' claims.

The Fullers based their claims for PIP benefits on Section I of House's GEICO policy. Section I of the policy pertains to "Liability Coverages," and protects the insured against tort claims raised by third parties. It does not govern the entitlement to PIP benefits.[1] Section II of the GEICO policy applies to PIP coverage and provides different coverage and definitions than Section I. Section II starts with a general statement of coverage:

> We will pay for personal injury protection benefits to or on behalf of each *eligible injured person* for *allowable expenses, work loss and survivors' benefits* incurred as a result of *bodily injury* caused by an accident arising out of the *ownership, operation, maintenance or use of a motor vehicle as a motor vehicle.* [Emphasis in original.]

"Eligible injured person" is defined to include "Any other person who suffers *bodily injury* while *occupying* an *insured auto*." (Emphasis in original.) The definition of an "insured auto" is different from an "owned auto" in the liability insurance section and is key to the resolution of this matter:

> *Insured auto* means an auto with respect to which *you* are required to maintain security under Chapter 31 of the Michigan Insurance Code and to which the *Bodily Injury* liability coverage of this policy applies and for which a specific premium is charged. [Emphasis in original.]

The words "you" and "your" are also defined in the policy and include only the named policyholder and his or her spouse.

As correctly noted by GEICO, Section I of the policy, upon which the Fullers rely, applies only to liability, not PIP, coverage. Had Gregory Fuller been sued by a person in the other car involved in the accident, Section I would be analyzed to determine coverage.[2] This case involves only a claim for first-party PIP benefits. The eligibility for PIP coverage is governed by Section II.

---

[1] The GEICO tort liability coverage provides protection of an "owned auto," which includes a "temporary substitute auto," defined as "an automobile . . ., not owned by you, temporarily used with the permission of the owner. This vehicle must be used as a substitute for the owned auto . . . when withdrawn from normal use because of its breakdown, repair, servicing, loss, or destruction."

[2] In fact, it appears that coverage would be available to Gregory had he been sued. Under *State Farm*, discussed below, Lakeside would not be permitted to foist its priority status onto the renter's insurer. However, if Lakeside's policy fell short, Gregory could have relied upon the GEICO policy to cover the remainder.

When analyzing coverage under Section II, it is important to remember two things: (1) the Fullers are not the named insureds, House is, and (2) the Fullers were not in the vehicle covered by the GEICO policy, that vehicle was in the shop.

Part 1 of Section II of the GEICO policy begins by declaring that GEICO will pay PIP benefits to "each eligible injured person." An injured person is deemed eligible if he or she "suffers bodily injury while occupying an insured auto." The Fullers want to apply the definition of "owned auto" from Section I of the policy. However, GEICO gave "insured auto" a particular definition for purposes of Section II. It is an auto (1) "with respect to which **you** are required to maintain" no-fault coverage, and (2) "to which the Bodily Injury liability coverage policy applies," and (3) "for which a specific premium is charged." (Bold added.) "You" is defined in the policy as only the named insured—House—and her spouse, if any.

The Fullers' request for PIP benefits fails under the first prong of the "insured auto" definition. House was not required to maintain no-fault coverage for the Impala and therefore it is not an insured auto under the PIP benefits section of the GEICO policy. MCL 500.3101(1) demands that: "The owner or registrant of a motor vehicle required to be registered in this state shall maintain security for payment of benefits under personal protection insurance, property protection insurance, and residual liability insurance." The circuit court correctly determined that House was not the "owner or registrant" of the Chevy Impala, Lakeside was. MCL 500.3101(2) defines "owner" and "registrant" as follows:

(h) "Owner" means any of the following:

(*i*) A person renting a motor vehicle or having the use thereof, under a lease or otherwise, for a period that is greater than 30 days.

(*ii*) A person who holds the legal title to a vehicle, other than a person engaged in the business of leasing motor vehicles who is the lessor of a motor vehicle pursuant to a lease providing for the use of the motor vehicle by the lessee for a period that is greater than 30 days.

(*iii*) A person who has the immediate right of possession of a motor vehicle under an installment sale contract.

(i) "Registrant" does not include a person engaged in the business of leasing motor vehicles who is the lessor of a motor vehicle pursuant to a lease providing for the use of the motor vehicle by the lessee for a period that is greater than 30 days.

A person renting a vehicle can only become the owner or registrant of the vehicle if the rental term is more than 30 days. See MCL 500.3101(2)(h)-(i). House's rental agreement was for one week. Accordingly, Lakeside remained the owner and registrant of the vehicle at all relevant times.

In its rental agreement, Lakeside attempted to shift the burden of paying PIP benefits onto its renters' insurance providers. This is not permitted under Michigan law. In *State Farm*, 452 Mich 25, the Supreme Court considered whether a car rental agency could shift the burden

of residual liability insurance, which is also mandated by MCL 500.3101(1), onto the renter's insurance provider. The Court declared that such provisions in rental agreements violate the no-fault act and are void.

*State Farm* involved three consolidated appeals. The renter's agreements underlying all three cases included provisions placing the renter's insurance policy in highest priority in relation to residual liability. *Id.* at 28-30. The Court first analyzed its earlier decision in *Citizens Ins Co v Federated Mut Ins Co*, 448 Mich 225; 531 NW2d 138 (1995). In *Citizens*, a car dealership provided the driver a "loaner vehicle" while the driver's personally-owned vehicle was being repaired. *State Farm*, 452 Mich at 31. The driver was involved in an accident while using the loaner vehicle and a third-party successfully sought compensation against the driver for his or her damages. *Id.* Relying on MCL 500.3101(1), the *Citizens* Court "stressed that it is the '*owner* or *registrant* of a motor vehicle' who must provide residual liability insurance under the act." *State Farm*, 452 Mich at 31-32, quoting *Citizens*, 448 Mich at 228 (emphasis in original). The car dealership's insurance policy in *Citizens* "purported to deny coverage to the driver of the car." *State Farm*, 452 Mich at 32. That provision was void, *Citizens* held, because the no-fault act requires the vehicle owner to provide such coverage. *Id.*

The *State Farm* Court was "no longer convinced that a distinction between a 'loaner' car and a rental car can be sustained." *Id.* at 32-33.

> In *Citizens*, Federated attempted to deny coverage, thus forcing the driver's insurers to provide coverage. The car rental companies in this case similarly force a choice. A driver can either sign an agreement stating that the driver's insurance will be primary, or the driver can agree to pay an extra fee to the car rental company for insurance coverage. The driver is not informed that the car rental company, as the owner, is required by law to carry insurance on the vehicle that covers any permissive user. The owner cannot shift that responsibility to another party. Just as Federated was required to provide insurance coverage for permissive users in *Citizens*, we now hold that a car rental company, like any other car owner, must obtain insurance coverage for permissive users of its vehicles. [*State Farm*, 452 Mich at 33-34.]

"The gravamen" of this holding, the *State Farm* Court emphasized, "is that the no-fault act requires car owners to be primarily responsible for insurance coverage on their vehicles." *Id.* at 34. And a rental driver "cannot defeat the provisions of the no-fault act" by excusing the vehicle's actual owner (the rental company) from providing insurance. *Id.* at 35.

MCL 500.3101(1) mandates a vehicle's owner or registrant to maintain three types of coverage under his or her no-fault policy: "security for payment of benefits under personal protection insurance, property protection insurance, and residual liability insurance." *Citizens*, *State Farm*, and their progeny have all considered whether the owner/registrant can shift the burden of maintaining residual liability insurance. The answer has been a resounding, "no." There is no reason to treat any differently the other two types of coverage mandated in the same sentence of MCL 500.3101(1). The Legislature has decided that the vehicle's owner or registrant must maintain the required coverage and the Supreme Court has interpreted the

provision to prohibit shifting of the duty. Lakeside could not avoid its insurance requirements and its contractual attempt to do so is void.

The Fullers sued the wrong insurance company, without providing written notice to Lakeside's insurer, and it is now too late for them to seek PIP benefits from any other provider. See MCL 500.3145 (notice must be give to insurer within one year of accident). They claim that GEICO lulled them into sitting on their rights by implying that benefits would be provided. As a result, the Fullers contend that GEICO should be equitably estopped from denying coverage now.

> For equitable estoppel to apply, plaintiff must establish that (1) defendant's acts or representations induced plaintiff to believe that the limitations period clause would not be enforced, (2) plaintiff justifiably relied on this belief, and (3) she was prejudiced as a result of her reliance on her belief that the clause would not be enforced. [*McDonald v State Farm Ins Co*, 480 Mich 191, 204-205; 747 NW2d 811 (2008).]

Courts are to apply equitable estoppel sparingly and only in the most extreme cases, for example when the defendant intentionally or negligently deceived the plaintiff. See *Klass v Detroit*, 129 Mich 35, 39-40; 88 NW 204 (1901).

The letter cited by the Fullers in no way represents a deception. In the letter, a GEICO claims adjuster posits, "We previously advised that we have now received documents requested to support that Gregory and Patrice Fuller will be eligible for coverage under the GEICO policy." This does not imply that the Fullers actually are eligible. It implies that GEICO asked for certain documents to ascertain whether the Fullers "will be eligible" and those documents had arrived at the GEICO office. The letter goes on to explain that the Fullers had not been cooperative in attending their scheduled independent medical exams. These exams were required "to assist in our investigation," the agent asserted. An ongoing investigation suggests that coverage had not yet been determined.

Moreover, as aptly noted by GEICO, the accident occurred on November 11, 2011. The Fullers had until November 11, 2012 to notify the correct insurance provider of their injuries. They obviously realized by October 24, 2012, that GEICO would not voluntarily pay the claim given that they filed suit on that date. The next rational choice in selecting an insurer would be the company that insured the rental company's vehicles. Nothing prevented the Fullers from notifying that insurance provider of the accident and beginning the process of requesting PIP benefits. This could have been done contemporaneously with the Fullers' suit against GEICO. The Fullers did not justifiably forego their other remedies in response to GEICO's letter.

Ultimately, the circuit court properly dismissed the Fullers' claims against GEICO. Lakeside, as the statutorily-defined owner and registrant of the subject vehicle, was required by statute to maintain PIP coverage over the car. Lakeside was precluded by caselaw from shifting

the burden of coverage onto the renter of the vehicle. Accordingly, GEICO, the company insuring the renter's personal vehicle, was not responsible for paying the PIP benefits of a permissive user injured while in the rental car.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood