*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KORECO CLEAVES,

      Plaintiff-Appellant,

v

METROPOLITAN GROUP PROPERTY AND
CASUALTY INSURANCE COMPANY,

      Defendant-Appellee,

and

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, ISIS DAVIS, and
INDE DAVIS,

      Defendants.
.

UNPUBLISHED
May 9, 2019

No. 342576
Wayne Circuit Court
LC No. 16-009254-NI

Before: BOONSTRA, P.J., and METER and FORT HOOD, JJ.

PER CURIAM.

In this no-fault insurance action, plaintiff appeals by right the trial court's order granting summary disposition to defendant Metropolitan Group Property and Casualty Insurance Company and dismissing plaintiff's underinsured-motorist claim. We affirm.

## I. BACKGROUND

The parties do not dispute the basic facts underlying this action. Plaintiff was riding a moped[1] on Grand River Ave in Detroit when he was struck by a vehicle driven by defendant Isis

---

[1] As used in this opinion, the term "moped" refers to a two-wheeled motorized land vehicle, similar to a motorcycle.

Davis but owned by defendant Inde Davis. The moped was owned by plaintiff's mother. Plaintiff's mother had entered into a no-fault insurance contract with defendant Metropolitan which provided both personal-injury-protection (PIP) and underinsured-motorist coverage for her and her relatives under certain conditions. The policy expressly covered two vehicles: a 2013 Dodge Journey and a 1995 Ford F-150. The moped was not listed on the policy.

As a result of the accident, plaintiff allegedly suffered injuries to his head, neck, back, and nervous system. Plaintiff sought compensation for these injuries from several defendants in a single complaint. Count I of the complaint pled a first-party no-fault claim for PIP benefits against Metropolitan and defendant State Farm Mutual Automobile Insurance Company.[2] Count II of the complaint pled claims of negligence and vicarious liability against defendants Isis and Inde Davis. Finally, Count III pled a claim for underinsured-motorist benefits against Metropolitan.

The trial court dismissed plaintiff's claim for PIP benefits against State Farm, reasoning that plaintiff had failed to provide State Farm with timely notice of the suit under MCL 500.3145.[3] Plaintiff later resolved his claim against Metropolitan for PIP benefits and those parties stipulated to the trial court's dismissal of Count I in its entirety. Plaintiff also stipulated to the dismissal of Count II against Isis and Inde Davis.

---

[2] The complaint did not explain how State Farm related to plaintiff or the suit. Other documents in the record indicate that plaintiff believed that he had a valid insurance policy with State Farm, but State Farm denies that such a policy existed at the time of the accident.

[3] MCL 500.3145 provides:

(1) An action for recovery of personal protection insurance benefits payable under this chapter for accidental bodily injury may not be commenced later than 1 year after the date of the accident causing the injury unless written notice of injury as provided herein has been given to the insurer within 1 year after the accident or unless the insurer has previously made a payment of personal protection insurance benefits for the injury. If the notice has been given or a payment has been made, the action may be commenced at any time within 1 year after the most recent allowable expense, work loss or survivor's loss has been incurred. However, the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced. The notice of injury required by this subsection may be given to the insurer or any of its authorized agents by a person claiming to be entitled to benefits therefor, or by someone in his behalf. The notice shall give the name and address of the claimant and indicate in ordinary language the name of the person injured and the time, place and nature of his injury.

(2) An action for recovery of property protection insurance benefits shall not be commenced later than 1 year after the accident.

Metropolitan moved for summary disposition on Count III of the complaint, arguing that the insurance policy excluded plaintiff from underinsured-motorist coverage because he was occupying a motor vehicle that was owned by a policyholder, but for which coverage was not sought. The trial court agreed that the policy precluded plaintiff's underinsured-motorist claim and granted summary disposition to Metropolitan under MCR 2.116(C)(10), thereby dismissing Count III in its entirety. This appeal followed.

## II. ANALYSIS

Plaintiff does not challenge the trial court's dismissal of Counts I and II of his complaint. Plaintiff's only argument on appeal is that the trial court erred by concluding that plaintiff was excluded from underinsured-motorist coverage and by granting summary disposition to Metropolitan on Count III of his complaint. "We review de novo a trial court's grant or denial of summary disposition." *Tomra of North America, Inc v Dep't of Treasury*, 325 Mich App 289, 293-294; ___ NW2d ___ (2018). "A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim, and is appropriately granted when, except as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." *Id*. at 294. "We review de novo questions of contract interpretation and considerations regarding the legal effect of a contractual provision." *Fuller v GEICO Indemnity Co*, 309 Mich App 495, 498; 872 NW2d 504 (2015).

"Because a no-fault insurance policy is a contract, the general rules of contract interpretation apply." *Id*. We "must construe and apply unambiguous contract provisions as written." *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377-378; 836 NW2d 257 (2013) (internal citation and quotation marks omitted).[4] "In ascertaining the meaning of a contract, we give the words used in the contract their plain and ordinary meaning." *Id*. at 378 (internal citation and quotation marks omitted). A contractual provision is ambiguous when it is reasonably capable of conflicting interpretations. *Id*. The insurer bears the burden of proving that a policy exception applies and an ambiguous exclusionary provision will be construed in favor of the insured. *Id*. at 378-379.

Plaintiff's mother's policy with Metropolitan is divided into several sections. First, there is a set of general definitions that apply throughout the contract. Then, there are four coverage sections: one for "AUTOMOBILE LIABILITY"; one for "PERSONAL INJURY PROTECTION"; one for "UNINSURED AND UNDERINSURED MOTORISTS"; and one for "PHYSICAL DAMAGE." Each coverage section contains its own set of "ADDITIONAL DEFINITIONS" which apply to that coverage section only, as well as a set of "COVERAGE EXCLUSIONS." The policy concludes with a lengthy recitation of "GENERAL POLICY

---

[4] This Court will, however, refuse to apply an unambiguous contractual provision when the provision "violates the law or succumbs to a defense traditionally applicable under general contract law." *Dells*, 301 Mich App at 377-378. Plaintiff, however, has not argued that a traditional contract defense applies or that the coverage exclusion violates the law. Plaintiff raises only interpretive arguments on appeal.

CONDITIONS" and a signature page. Some of these provisions are then amended by a policy endorsement.[5]

Plaintiff argues that he is entitled to coverage under the underinsured-motorist section of his mother's policy with Metropolitan. In this section, Metropolitan agreed to pay damages for bodily injury sustained by "**you** or a **relative**, caused by an accident arising out of the ownership, maintenance, or use of an **underinsured motor vehicle**, which **you** or a **relative** are legally entitled to collect from the owner or driver of an **underinsured motor vehicle.**"[6] Underinsured-motorist coverage did not extend, however, to "any person **occupying** or struck by a **motor vehicle** owned by **you** or a **relative**, other than a **covered automobile**."

There is no dispute (1) that plaintiff's mother owned the moped that plaintiff was riding at the time of the accident, (2) that plaintiff is a relative of his mother, the policy holder, and (3) that plaintiff was struck by an underinsured vehicle driven by Isis Davis and owned by Inde Davis. Accordingly, assuming *arguendo* that plaintiff has a right to collect from the Davis defendants, the only questions remaining are whether plaintiff was "**occupying**" the moped at the time of the accident and whether the moped qualifies as a "**motor vehicle** . . . other than a **covered automobile**."

Regarding the former question, "occupying" is not defined in the underinsured-motorist section of the policy. Rather, the general-definitions section of the policy defines "occupying" to "mean being in or upon, entering into, or alighting from a **motor vehicle**."[7] Accordingly, by riding "upon" the moped, plaintiff was occupying that vehicle within the plain meaning of the policy. As to the latter question, the underinsured-motorist section defines "covered automobile" in pertinent part to mean "an **automobile** described in the Declarations to which the Automobile Liability coverage of this policy applies and for which a specific premium is charged." As previously mentioned, the moped was not listed in the policy declarations. Thus, the moped does not qualify as a "covered automobile."

Therefore, this case turns on whether the moped constitutes a "motor vehicle" as that term is used in the policy exclusion. Motor vehicle is not defined in the underinsured-motorist sections of the policy or its endorsement. Rather, the general-definitions section of the policy provides that " **'MOTOR VEHICLE'** means a land motor vehicle designed for use mainly on public roads."[8] Plaintiff does not argue that the moped was not a land vehicle designed for use

---

[5] The relevant parties appear to have executed contemporaneously the main policy and its endorsement.

[6] This exclusion was not amended by the policy endorsement.

[7] This definition was not amended by the policy endorsement.

[8] The policy lists several exceptions to this definition, none of which apply to the moped. For instance, the policy excludes from the definition of motor vehicle "a farm type tractor or other farm equipment designed for use principally off public roads, while not upon public roads." This general definition for "motor vehicle" was not amended by the policy endorsement.

on public roads. Indeed, plaintiff was injured while riding the moped on a public road.[9] In fact, plaintiff does not even address this definition in his brief on appeal.

It would appear that this Court's analysis could end here. Nonetheless, plaintiff provides this Court with several contrary definitions of "motor vehicle" and argues that these definitions indicate that the coverage exception is ambiguous. First, plaintiff argues that the exception is ambiguous because an endorsement to the PIP-coverage section defines motor vehicle as being limited to vehicles with "more than two wheels."[10] We disagree. As noted previously, the general definitions apply throughout the policy. The PIP-coverage endorsement applies only "[w]ith respect to the coverage provided by this endorsement," meaning the PIP provisions of the policy. Moreover, the endorsement provides that its "ADDITIONAL DEFINITION[]" for motor vehicle applies only when it is "used in reference to this insurance," again meaning in reference to the PIP provisions of the policy. Thus, there is nothing in the PIP endorsement that suggests that its definitions apply to underinsured-motorist coverage and therefore nothing in the endorsement from which we can find any relevant ambiguity.

Similarly, plaintiff argues that the term "motor vehicle" is ambiguous because Merriam-Webster's dictionary and several court cases have limited similar terms to four-wheeled vehicles. Again, we disagree. Courts will not look to outside authorities to create an ambiguity where no ambiguity exists in the contract. "If the contractual language is unambiguous, courts must interpret and enforce the contract as written because an unambiguous contract reflects the parties' intent as a matter of law." *Hastings Mut Ins Co v Safety King, Inc*, 286 Mich App 287, 292; 778 NW2d 275 (2009). The policy contains only one relevant definition for the term "motor vehicle." That definition is not limited to four-wheeled vehicles, although other definitions in the policy are so limited. See *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 468; 663 NW2d 447 (2003) ("courts must also give effect to every word, phrase, and clause in a contract"). Accordingly, we conclude that, under the plain language of the insurance policy, the moped is a "motor vehicle."

Therefore, because plaintiff was injured while occupying a motor vehicle other than a covered automobile, the trial court properly concluded that plaintiff was excluded from underinsured-motorist coverage and that defendant was entitled to summary disposition.

Affirmed.

/s/ Mark T. Boonstra
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood

---

[9] Plaintiff's use of the vehicle on public roads is consistent with his mother's registration of the vehicle as a "MOTOR CYCLE."

[10] As originally written, the PIP-coverage section of the policy did not contain a separate definition for "motor vehicle."