*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CITY OF BAD AXE, CITY OF BAD AXE
DEPARTMENT OF PUBLIC WORKS, CITY OF
BAD AXE WASTEWATER TREATMENT
FACILITY,

UNPUBLISHED
January 14, 2020

Plaintiffs-Appellees,

v

No. 345810
Huron Circuit Court

PAMAR ENTERPRISES, INC., and SECURA
SUPREME INSURANCE COMPANY,

LC No. 16-105392-CK

Defendants-Appellants.

Before: K. F. KELLY, P.J., and BORRELLO and SERVITTO, JJ.

PER CURIAM.

Defendants appeal as of right the order granting summary disposition in favor of plaintiffs and the judgment comprised of attorney fees and costs in this duty to defend and indemnification action. We affirm.

## I. BASIC FACTS

This action arises from defendant's, Pamar Enterprises, Inc. (Pamar), successful bid to contract with the Michigan Department of Transportation (MDOT) for reconstruction of highway M-53 and sewer work located in the city of Bad Axe (plaintiff city). The MDOT proposal advised that the successful bidder was responsible for securing insurance in accordance with its specifications and the policy additionally had to provide coverage for both the county and plaintiff city. Defendant Pamar secured a general commercial liability policy through defendant, Secura Supreme Insurance Company (Secura). After defendant Pamar commenced work, a significant rain event occurred, and rainwater accessed the sanitary system in the project area where defendant Pamar performed its work. Consequently, there was damage to the property of city residents. The city residents filed suit against defendant Pamar, and it named plaintiff city as a non-party at fault. Consequently, the city residents amended their complaint to raise a claim against plaintiff city pursuant to the governmental tort liability act (GTLA), MCL

-1-

691.1401 *et seq*. When plaintiff city requested that defendants provide a defense, they declined to do so, concluding that the city residents sought to hold plaintiff city responsible for its own acts of negligence regarding its maintenance of the sewer system. Plaintiffs filed suit to compel defendants to provide a defense and indemnity as well as reimbursement of expended attorney fees. The trial court granted plaintiffs' motion for summary disposition, concluding that defendant Secura was required to provide a defense and ordered payment of attorney fees. After defendants moved for a determination regarding a reasonable attorney fee, the trial court conducted oral argument, reviewed the bills and the supplied economic information before ruling that plaintiffs were entitled to reasonable attorney fees and costs. From this ruling, defendants appeal.

## II. APPLICABLE LAW

A trial court's decision to grant or deny summary disposition is reviewed de novo. *Ter Beek v City of Wyoming*, 495 Mich 1, 8; 846 NW2d 531 (2014). The construction and application of an insurance policy presents a question of law that is reviewed de novo. *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 376-377; 836 NW2d 257 (2013). The rules governing contract construction apply to an insurance policy. *Fuller v Geico Indemnity Co*, 309 Mich App 495, 498; 872 NW2d 504 (2015). To determine the policy terms, the entire document must be read with the goal of enforcing the parties' intent. *Id*. "Clear and unambiguous provisions of an insurance policy must be enforced according to their plain meaning." *Id*.

"The duty to defend and the duty to indemnify are distinct and separable duties." *Mich Ed Employees Mut Ins Co v Turow*, 242 Mich App 112, 116-117; 617 NW2d 725 (2000). The duty to defend is broader than the duty to indemnify. *Busch v Holmes*, 256 Mich App 4, 9; 662 NW2d 64 (2003). The duty to defend arises only from the language of the insurance contract. *Mich Ed Employees Mut Ins Co*, 242 Mich App at 117. An insurer has the duty to defend an insured if the allegations raised against the insured even arguably fall within the terms of the policy. *Matouk v Mich Muni League Liability & Prop Pool*, 320 Mich App 402, 409; 907 NW2d 853 (2017).

With regard to insurance contracts, this Court delineated the following rules addressing the duty to defend:

> The duty of an insurance company to defend its insured arises solely from the language of the insurance contract. The insurer's duty to defend is determined by the allegations in the complaint against the insured. An insurer has a duty to defend, despite theories of liability asserted against any insured which are not covered under the policy, if there are any theories of recovery that fall within the policy. This duty is not limited to meritorious suits and may even extend to actions which are groundless, false, or fraudulent, so long as the allegations against the insured even arguably come within the policy coverage. [*Farmers & Merchants Mut Fire Ins Co v LeMire*, 173 Mich App 819, 824; 434 NW2d 253 (1988) (citations omitted).]

The trial court's decision to award attorney fees and the determination regarding the reasonableness of the fees is reviewed for an abuse of discretion. *Teran v Rittley*, 313 Mich App

197, 208; 882 NW2d 181 (2015). An abuse of discretion occurs when the court selects an outcome outside the range of reasonable and principled outcomes. *Id*. When the trial court renders factual findings underlying the attorney fee award, those findings are reviewed for clear error. *Id*. This Court's review of unpreserved claims is limited to plain error affecting substantial rights. *Bennett v Russell*, 322 Mich App 638, 642-643; 613 NW2d 364 (2018).

## III. DUTY TO DEFEND

We conclude that the trial court properly granted summary disposition in favor of plaintiffs in light of the language of the amended complaint. The documentary evidence establishes that MDOT and plaintiff city entered into a contract on January 30, 2013, for reconstruction work on Highway M-53 within the city limits that would be designated as a state trunkline highway. As a result of that contract, MDOT solicited bids in accordance with the 2012 Standard Specifications for Construction. In addition to advising the bidder that the construction specifications would govern the agreement, the proposal also contained the following paragraph:

> Unless the bidder gives MDOT advance written notice, MDOT may correspond directly with the Insurance agencies concerning questions and problems with the Insurance certificates, bonds and related materials. It is the obligation of the bidder to monitor the filing of the Insurance certificates, bonds, and related materials with MDOT and the bidder is responsible for any failure to provide MDOT with the required materials, on a timely basis and in proper form.

The proposal also advised of the following "Notice to Bidders":

> Insurance
>
> The contractor shall provide for and in behalf of the State, the Commission, the Department and its officials, agents, and employees, and all agencies and their employees, specifically named below, or as stated on the Insurance Requirements (Form 1304A, dated 05/2006), **an Owner's Protective Public Liability Insurance or the alternative option described in section 107.10 of the 2012 Standard Specifications for Construction, Indemnification, Damage Liability and Insurance.**
>
> The agencies are the:
>
> Michigan Department of Transportation,
>
> Huron County
>
> Huron County Road Commission
>
> City of Bad Axe [Emphasis in original.]

The MDOT 2012 Standard Specifications for Construction, section 107.10, state in pertinent part:

A. **Indemnification**. The Contractor must hold harmless, indemnify, and defend in litigation the State, the Commission, the Department, and their agents and employees against claims for damage to public or private property and for injuries to persons arising out of the performance of the work until the Contractor achieves satisfactory final inspection in accordance with subsection 109.07.C.1. The Contractor will not be responsible for claims that result from the sole negligence or willful acts or omissions of said indemnitee.

\* \* \*

C. **Bodily Injury and Property Damage**. The Contractor must carry adequate insurance, satisfactory to the Department, to afford protection against claims for damage to public or private property and injuries to persons arising out of the performance of the work until the Contractor achieves satisfactory final inspection in accordance with subsection 109.07.C.1. If required by the contract, the Contractor must also carry adequate insurance to protect the owner of premises on or near which construction operations are to be performed. Copies of completed certificates of insurance must be submitted to the Department in accordance with subsection 102.15.

\* \* \*

4. **Owners Protective Liability**. The Contractor must ensure that the insurer extends bodily injury and property damage protection including general supervision of work performed, to the State, the Commission, the Department, and their agents and employees and as indicated by the identity of the contracting parties, to participating political subdivisions and public corporations. The minimum limit will be $1,000,000.

In lieu of the Owners Protective Liability, the Contractor must add to their Bodily Injury and Property Damage Policy:

a. **Additional Insured**. The Bodily Injury and Property Damage Policy must name as additional insured the State, the Department, and the Commission and all agents and employees thereof and, where indicated by the identity of the contracting parties, the protection must be extended to all participating political subdivisions and public corporations. [Emphasis in original.]

Thus, it is apparent from the above specifications that MDOT required the successful bidder to provide insurance to all agents of the contract (and plaintiff city was expressly delineated in the notice) as well as all participating political subdivisions and public corporations.

MDOT and defendant Pamar signed a contract for the M-53 state trunkline project on April 1, 2013. Defendant Pamar also obtained commercial general liability insurance from defendant Secura as required by MDOT. The policy contained the following pertinent provisions:

-4-

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

The policy also had an endorsement that modified the policy. It set forth, in pertinent part:

A. Additional Insured When Required By Written Construction Contract

1. Operations Performed For An Additional Insured

WHO IS AN INSURED is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in a written contract or written agreement prior to a loss, that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

a. Your acts or omissions; or

b. The acts or omissions of those acting on your behalf;

In the performance of your ongoing operations for an additional insured.

In light of the above, it is apparent that defendant Pamar obtained a general commercial policy of insurance through defendant Secura because it was a requirement of its contractual agreement with MDOT to be awarded the bid for the reconstruction of M-53 located in plaintiff city. The notice to bidders further advised that insurance had to be secured for MDOT, the county, and the city. Although the policy contained an "additional insured" endorsement, the plain language of the "additional insured" provision modified the "WHO IS AN INSURED" language of the policy. Therefore, defendants' argument, that there was a distinction between an insured and an additional insured, lacks merit.

Having concluded that defendant Pamar was required to obtain insurance for plaintiff city and that the policy obtained from defendant Secura had a duty to defend, the issue becomes whether the underlying complaint raises a theory of liability against an insured that falls within the policy coverage. Defendants alleged that a review of the amended complaint revealed that city residents sought to hold plaintiffs responsible for their own acts of negligence. However, caselaw provides that a contracting party has the duty to defend if the allegations in an underlying lawsuit arguably fall within the terms of the contract. *Citizens Ins Co*, 279 Mich App at 74. Although defendants cite to the fact that the amended complaint contains separate allegations against plaintiffs, defendants ignore the factual portion of the complaint that delineate

the actions by defendant Pamar that purportedly caused the city residents' damages and the alterations that it made to the area during construction which allowed the rainwater to overwhelm the sewer system. The amended complaint fact section provides, in relevant part:

29. On or about April 1, 2013, Defendant Pamar contracted with the Michigan Department of Transportation to perform, among other things, asphalt reconstruction, concrete curb, gutter, sidewalk, ramps and driveways, storm and sanitary sewer, watermain, traffic signal, and pavement markings on M-53 from Outer Drive easterly to M-142 (the "Project") in the City of Bad Axe, Huron County, State of Michigan. **Exhibit A**.

30. On or about April 8, 2013, Defendant Pamar closed the work area and commenced the Project.

31. By July 6, 2014, Defendant Pamar had performed demolition work and removed the concrete/asphalt road material from the Project area, reducing it to the dirt/stone base.

32. The removal of the road material from the Project area created a bathtub like area where the base was significantly lower than the surface level sides.

33. Also, by July 6, 2013, Defendant Pamar cut the openings for the sanitary system flush with the new dirt/stone ground level.

34. Defendant Pamar did not take steps to ensure that the sanitary sewer entrance [was] properly covered so as to not be accessed by water or other materials.

35. On July 6, 2013, the City of Bad Axe, in and around the Project, received large amounts of rainfall.

36. On July 8, 2013, the City of Bad Axe received additional rainfall.

37. On both July 6, 2013 and July 8, 2013, rainwater accessed the sanitary system in the Project area because of the changes made to the work zone by Defendant Pamar.

38. The water that entered the sanitary system through the Project area exposed by Defendant Pamar flooded the sanitary system and resulted in each Plaintiff having water and/or sewage water flood their homes.

39. Upon information and belief and based on the Notice of Non-Party Fault filed by Defendant Pamar, Bad Axe failed to respond to the systematic problems and insufficiencies of its sanitary sewer system.

40. Upon information and belief, the systematic problems and insufficiencies of the Bad Axe sanitary sewer system were the cause or a contributing cause to the backup of water and/or sewage into Plaintiffs' homes.

The first count of the city residents' amended complaint raised a claim of negligence against defendant Pamar. The following allegations were raised against defendant Pamar:

42. Defendant Pamar owed a duty to the Plaintiffs and the public in general to complete the Project in a professional manner, while not causing harm to Plaintiffs or the public.

43. Defendant Pamar owed a duty to the public in general and these Plaintiffs in particular to complete the Project utilizing due care and reasonably prudent construction techniques.

44. Defendant Pamar breached the duty owed to Plaintiffs.

45. Defendant Pamar's breach of its duty of care included, but is not limited to, the following acts or commissions, to wit:

a. Creating a trenched area that could fill full of water and overwhelm the sanitary system;

b. Leaving the site without proper monitoring or otherwise securing the site;

c. Cutting down and opening the man hole or drain pipes so that they could be infiltrated by rain; or

d. Not making a proper plan or even any plan to protect the sanitary system from being overwhelmed in the event of rain.

46. As a direct and proximate cause of Defendant Pamar's breach of its duty, Plaintiffs' sustained damage, including but not limited to, the introduction of raw sewage into their houses, the loss and destruction of property, both real and personal, humiliation, emotional loss and pain and suffering.

47. The loss was reasonably foreseeable.

It is apparent from the allegations by the city residents in the underlying amended complaint that they claimed defendant Pamar's alteration to the sewage system during construction caused the rain event to overwhelm the system and damage to their property. In turn, defendant Pamar filed a notice of non-party at fault naming plaintiff city. This caused the city residents to raise a claim of liability against plaintiff city in its amended complaint. Irrespective of the fact that a separate and distinct claim was raised against plaintiff city, the allegations in the amended complaint attribute their damages to the actions of defendant Pamar in its construction work by its alterations to the area. In light of defendant Pamar's claim that plaintiffs' sewage system was deficiently maintained, the city residents' amended complaint included allegations that plaintiffs' maintenance of the system was the cause or a contributing cause.

Again, a contracting party has the duty to defend if the allegations in an underlying lawsuit arguably fall within the terms of the contract. *Citizens Ins Co*, 279 Mich App at 74. The allegations in the complaint first attribute the city residents property damage to defendant

-7-

Pamar's negligence and, after defendant Pamar placed the blame on plaintiffs, the city residents amended their complaint to continue to allege that defendant Pamar was responsible or that both defendant Pamar and plaintiffs were responsible. Thus, the addition of plaintiffs did not alter the fact that the underlying lawsuit arguably falls within the terms of the policy because it contests defendant's actions and involvement in causing the property damage. Further, the caselaw directs to an examination of the complaint to determine if the allegations arguably fall within the terms of the policy. The caselaw does not conclude that a separate claim against a separate entity bars policy coverage. Further, "[i]n considering the gravamen of plaintiff's complaint, we examine the entire claim, looking beyond procedural labels to determine the exact nature of the claim." *Altobelli v Hartmann*, 499 Mich 284, 303; 884 NW2d 537 (2016). Defendants reliance on the filing of a separate claim against plaintiffs pursuant to the GTLA act is without merit because the courts must examine the entirety of the claim without being bound by the labels used.

In summary, city residents in the underlying complaint placed primary blame on defendant Pamar and when it raised plaintiffs as non-parties at fault, the city residents added claims against plaintiffs seemingly in the alternative to ensure recovery against a party in whole or partly responsible. However, the addition of plaintiffs to the underlying lawsuit did not alter the conclusion that policy coverage was invoked for the performance of the work. Moreover, plaintiff city was an additional insured to the policy. Accordingly, the trial court did not err in granting summary disposition in favor of plaintiffs and concluding that there was a duty to defend by defendant Secura.

## IV. ATTORNEY FEES AND COSTS

Furthermore, the trial court did not abuse its discretion in its award of attorney fees and costs to plaintiffs. The general rule is that attorney fees are not recoverable as an element of costs or damages unless an express legal exception exists. *Fleet Business Credit, LLC v Krapohl Ford Lincoln Mercury Co*, 274 Mich App 584, 589; 735 NW2d 644 (2007). An exception is presented when attorney fees are governed by the contract executed between the parties. *Id*. That is, the courts will enforce a contractual provision for payment of attorney fees which are considered damages. *Id*. An additional exception to the general rule occurs when a party seeks to recover attorney fees as damages for having to expend money to defend because of the wrongful acts of another. *Persichini v William Beaumont Hosp*, 238 Mich App 626, 639 n 7; 607 NW2d 100 (1999).

Generally, an evidentiary hearing should be held when a party challenges the reasonableness of the attorney fees requested. *Kernen v Homestead Dev Co*, 252 Mich App 689, 691; 653 NW2d 634 (2002). "However, if the parties created a sufficient record to review the issue, an evidentiary hearing is not required." *Id*. "A trial court's decision that an evidentiary hearing is not warranted is reviewed for an abuse of discretion." *Id*.

The party requesting attorney fees bears the burden of proving the reasonableness of the fees. *Vittiglio v Vittiglio*, 297 Mich App 391, 409; 824 NW2d 591 (2012). The following factors should be analyzed to determine the reasonableness of an attorney fee, but are not exclusive:

(1) the experience, reputation, and ability of the lawyer or lawyers performing the services,

(2) the difficulty of the case, i.e., the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly,

(3) the amount in question and the results obtained,

(4) the expenses incurred,

(5) the nature and length of the professional relationship with the client,

(6) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer,

(7) the time limitations imposed by the client or by the circumstances, and

(8) whether the fee is fixed or contingent. [*Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 281-282; 884 NW2d 257 (2016).]

The trial court does not abuse its discretion by including in the reasonable attorney fee the partial reimbursement of expenses incurred which may include the expenses of staff and other overhead as well as a reasonable profit. *Teran*, 313 Mich App at 210.

In its order determining attorney fees and costs, the trial court delineated the burden of proof, the factors to determine reasonableness, the rules of professional conduct, and the possible need for an evidentiary hearing before holding as follows:

The City of Bad Axe believes that $185.00/hr., the rate it actually charged, is appropriate. Secura believes that the fee customarily charged in this area is appropriate. Said fee is between $120.00/hr. and $140.00/hr. and is the rate its client actually pays for legal service based on statements made by Secura at the evidentiary [sic] hearing.

According to the 2014 Economics of Law Practice publication, the median hourly rate for an attorney with 35 plus years of practice is $250.00/hr. The median hourly rate for that attorney in a firm in excess of 50 attorneys is $375.00/hr. The median hourly rate for civil litigation attorneys in the Bay City/Midland/Saginaw area is $198.00/hr.

Considering the evidence presented, there is insufficient evidence in the record to support Secura's claim that $120.00/hr. and $140.00/hr. is a fee customarily charged. Considering the 2014 Economics of Law Practice Publication, this Court finds that the fee customarily charged in this area for similar legal service is $198.00/hr. However, according to the billing records submitted to this court, the City of Bad Axe was charged $185.00/hr. It stands to reason that $185.00/hr. is reasonable as it is less than the fee customarily charged

in this area for similar legal service. Therefore, this Court finds that $185.00/hr. is the starting point to consider as the reasonable hourly rate.

* * *

To date, the City of Bad Axe has expended 622 . . . billable hours pursuant to the detailed billings records submitted along with Ms. Hudson's Affidavit. The City of Bad Axe claims that the number of hours expended is reasonable. Secura argues that the number of hours expended is excessive. Secura's Exhibit D . . . lists its objections totaling $71,058.15. In part, Secura believes that "many of the hours that were billed by Plaintiff's [sic] counsel were for activities such as driving at the full hourly rate" as well as counsel summarizing depositions at the attorney hourly rate. . . .

After considering Secura's Objections pertaining to the number of billable hours and reviewing the submitted billing records, this Court finds that the City of Bad Axe has met its burden that 622 hours is reasonable including travel time and summarization of depositions. Therefore, this Court finds that the starting point for calculating a reasonable attorney fee the legal fees is $115,052.00.

The trial court next noted that plaintiffs' lead counsel, Heidi Hudson, had been a member of the bar since 1981 and had experience in this litigation, the claims involved extensive skill and labor and a "significant result" was achieved in light of the dismissal of the claims against plaintiff city, and the expenses of $9,725.94 were reasonable because they were incurred. The trial court rejected defendants' objection to $5,887.65 of the costs because they "do not appear to be duplicative, repetitive, unnecessary or excessive; including the travel time expenses." Thus, the court awarded attorney fees of $115,052.00 and costs of $9,725.94.

As an initial matter, we note that defendants failed to request an evidentiary hearing in the lower court, but merely objected to over $70,000 in requested fees by classifying the fees as excessive, unnecessary, secretarial, non-specific, duplicative, and overhead. Further, at the motion hearing on the attorney fees and costs motion, defense counsel agreed to proceed with oral argument on the motion and did not request an evidentiary hearing. A party may not harbor error as an appellate parachute by deeming treatment of an issue as proper in the trial court and raise the issue on appeal. *Auto-Owners Ins Co v Compass Healthcare, PLC*, 326 Mich App 595, 613; 928 NW2d 726 (2018).

Further, a review of defendants' argument on appeal reveal that they classify the attorney fees and costs as excessive, but fail to provide a rationale underlying the challenge. A party may not simply announce a position or claim error and leave it to the appellate court to discover and rationalize the basis for the claims or unravel and elaborate the arguments. *Innovation Ventures, LLC v Liquid Mfg, LLC*, 499 Mich 91, 518-519; 885 NW2d 861 (2016). For example, defendants objected to the entries for research and preparation of the dispositive motion. Yet, they failed to delineate why the hours expended (approximately 11) for that motion were excessive. In light of the fact that the trial court addressed the factors to determine the reasonableness of attorney fees, rendered factual findings, and did not find defendants' objections had merit, the award of attorney fees did not constitute an abuse of discretion.

Additionally, if defendant Secura could have secured a defense at a lower rate or negotiated the exclusion of travel fees, it should have accepted the defense of plaintiffs in the underlying litigation pursuant to a reservation of rights. Defendant Secura's disagreement with the charges by plaintiffs' counsel did not render them unreasonable.

Affirmed. Plaintiffs, as the prevailing parties, may tax costs.

/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello
/s/ Deborah A. Servitto